# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cv-00717-FDW

| | |
|---|---|
| BRADLEY LEAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| Department of Public Safety Medical ) | |
| Department, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review pursuant to 28 U.S.C. § 1915(e)(2) of Plaintiff Bradley Leak's pro se civil rights Complaint. (Doc. No. 1). Also before the Court is Plaintiff's Motion for Appointment of Counsel. (Doc. No. 7.)

## I. BACKGROUND

Plaintiff is a prisoner of the State of North Carolina who has filed this civil rights action under 42 U.S.C. § 1983. At all relevant times, Plaintiff was housed at Gaston Correctional Institution ("GCI"). He names as Defendants, the North Carolina Department of Public Safety Medical Department, FNU Burton, identified as Assistant Superintendent of GCI, FNU Brown, identified as Program Director at GCI, and FNU Lynch, identified as a nurse at GCI. (Compl. 1-2, Doc. No. 1.)

Construing the Complaint liberally and accepting the factual allegations as true, on August 14, 2017, Plaintiff made a request of Defendant Lynch to see the GCI psychiatrist, Dr. Vaughn. He wanted to talk to Dr. Vaughn about a letter he received on July 18, 2017, when he was housed at Lincoln Correctional Institution. The letter-writer claimed to have asked a friend who had recently been released from prison to go to the home of Plaintiff's mother and

1

granddaughter and rape them both. (Compl. 7.) Defendant Lynch asked Plaintiff a number of questions, including whether he intended to hurt himself or anyone else. Plaintiff responded in the negative and was allowed to leave the medical department. Thereafter, he "walked the yard" from 11:30 a.m. until 4:30 p.m. without interruption. (Compl. 2.)

Plaintiff alleges further that at 4:30 p.m., Defendants Burton and Brown placed him in restricted housing, and Burton told him that he would remain there until he could see Dr. Vaughn the next day. (Compl. 6-7.) Defendant Brown stated that Plaintiff "must have said something in Nurse Lynch's notes" and that Plaintiff "was suppose[d] to have threaten[ed] staff and [him]self." (Compl. 7.) Five minutes after being placed in restricted housing, Plaintiff was handcuffed, shackled, placed in a NCDPS vehicle, and transported to Hoke Correctional Institution, which, according to Plaintiff, has a residential mental health unit. (Compl. 6.)

Upon his arrival at Hoke, Plaintiff was placed in a segregated cell, his clothes were taken from him, and he was placed on suicide watch. On August 15, 2017, Plaintiff was seen by Dr. Hooten, identified as a psychiatrist at Hoke, who told Plaintiff there was nothing in Defendant Lynch's notes indicating he was suicidal or "made any comments to her." (Compl. 6.) Plaintiff returned to GCI on August 17, 2017. (Compl. 7.)

On August 18, 2017, Defendant Lynch explained to Plaintiff that Dr. Vaughn had told "this facility" to make the decision whether to transfer Plaintiff to Hoke. Plaintiff alleges he spoke to Dr. Vaughn on August 25, 2017, and again on September 27, 2017, and Dr. Vaughn apologized to him. (Compl. 7.)

Plaintiff alleges that as a result of Defendants' actions, his name was slandered and he was defamed. He also alleges he suffered emotional distress, was traumatized, and was put at greater psychological risk by being isolated. (Compl. 5.)

## II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis,[1] the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous," "malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). In its frivolity review, the Court must determine whether the Complaint raises an "indisputably meritless legal theory," Denton v. Hernandez, 504 U.S. 25, 32 (1992), or is founded upon clearly baseless factual contentions, such as "fantastic or delusional scenarios," Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

While a pro se complaint must be construed liberally, see Haines v. Kerner, 404 U.S. 519, 520 (1972), the liberal construction requirement will not permit a district court to ignore a plaintiff's clear failure to allege facts which set forth a claim that is cognizable under federal law, see Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A complaint fails to state a claim for relief if after accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences from those allegations in the plaintiff's favor, the complaint does not contain enough facts to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true,

---

[1] On December 29, 2017, the Court entered an Order waiving the initial partial filing fee and directing monthly payments be made from Plaintiff's prison trust account. (Doc. No. 6.)

demonstrate he has stated a claim entitling him to relief.  Id.

## IV. DISCUSSION

### A. Motion for Appointment of Counsel

Plaintiff moves for appointment of counsel based upon his indigent status.  (Doc. No. 7.) There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel.  Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987).  This case does not present exceptional circumstances that justify the appointment of counsel.  Consequently, Plaintiff's motion for the appointment of counsel shall be denied.

### B. Due Process

To state a claim under § 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff claims Defendants violated his right to due process by failing to afford him certain procedural safeguards (e.g. a pre-transfer adversarial hearing) prior to sending him to Hoke, as required by the Supreme Court's decision in Vitek v. Jones, 445 U.S. 480, 488, 493 (1980).

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law."  U.S. Const. Amend XIV.  A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," see, e.g., Vitek, 445 U.S. at 493-494 (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, see, e.g., Wolff v. McDonnell, 418 U.S. 539, 556-558,

4

(1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits). Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015).

In Vitek, upon which Plaintiff exclusively relies, Jones, the prisoner plaintiff, was determined by prison medical personnel to be suffering from a mental illness or defect that could not be properly treated at the state prison where he was serving a lengthy sentence for robbery. Id., 445 U.S. at 484. Jones was transferred to the security unit of a state mental hospital and subjected to mandatory behavior modification treatment without first being provided an opportunity to challenge the transfer or the forced treatment. See id. at 484, 488. The Supreme Court concluded that involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual. See id. at 493–94 ("A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections.") Specifically, the Court determined that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness," id. at 494, was "qualitatively different from the punishment characteristically suffered by a person convicted of [a] crime," id. at 493, and "constituted a major change in the conditions of confinement amounting to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing," id. at 488. Put another way, the stigmatizing characterization of the prisoner as mentally ill, when coupled with the

involuntary commitment to an asylum and forced participation in treatment, "exceeded the scope of the prisoner's original sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff does not allege that any of the named Defendants determined he had a mental illness, labeled him as mentally ill, or had him involuntarily committed to a mental hospital to undergo psychiatric treatment. See generally, Vitek, 445 U.S. 480. Instead, Plaintiff alleges he was temporarily transferred to the mental health unit of another prison to be placed on suicide watch. Plaintiff was seen by a Hoke Correctional psychiatrist the day after his admission and was returned to GCI two days later. He does not allege he underwent any treatment, voluntary or involuntary, or was forced to take medication against his will. As for the conditions of his confinement at Hoke, Plaintiff alleges only that upon his admission, he was placed in a segregated cell, his clothes were taken from him, and he was given a blanket.

Notwithstanding Plaintiff's conclusory assertions that the transfer to Hoke embarrassed and traumatized him and that his name was slandered and character defamed, Plaintiff cites no authority (and the Court could not find any) holding that a brief placement on suicide watch, even when accomplished by transfer to a mental health unit at another prison, without more, constitutes the kind of restraint on liberty that amounts to a grievous loss or exceeds a prisoner's sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force. Cf., e.g., Jefferson v. Helling, 324 F. App'x 612, 613, 2009 WL 1126690, at **1 (9th Cir. 2009) (unpublished) (affirming grant of summary judgment to defendants on claim "arising from [plaintiff's] emergency transfer to a prison's mental health unit" where plaintiff failed to offer any authority that due process required certain procedural safeguards "prior to the short-term emergency detention"); Fortune v. Bitner, 285 F. App'x 947, 950, 2008 WL 2766156,

6

at **2 (3d Cir. 2008) (unpublished) (two-week transfer to a "Special Assessment Unit" at another prison for the sole purpose of a mental health assessment did not give rise to a cause of action under Vitek (citing Gay v. Turner, 994 F.2d 425, 427 (8th Cir. 1993) (per curiam) (holding that the temporary transfers of plaintiff to a state mental hospital were "unlike the indefinite commitment in Vitek and did not constitute a major change in the conditions of confinement amounting to a grievous loss to [the inmate]"); Trapnell v. Ralston, 819 F.2d 182, 185 (8th Cir. 1987) (holding Vitek safeguards were not required for forty-eight hour housing in psychiatric ward))); Houston v. Cotter, 7 F. Supp. 3d 283, 296 (E.D.N.Y. 2014) ("Standing alone . . . the stigmatization from being assigned to suicide watch at a prison facility does not make that classification 'exceed[ ] the sentence in such an unexpected manner . . . to give rise to protection by the Due Process Clause of its own force.'" (quoting Sandin, 515 U.S. at 484)).[2] Nor does the fact there was no emergency in this case (because Plaintiff was not suicidal and nothing in Defendant Lynch's notes indicated he was suicidal) elevate the restraint on his liberty to one giving rise to protection directly under the Due Process Clause. Cf., Earl v. Racine Cty. Jail, 718 F.3d 689, 691 (7th Cir. 2013) (holding that regardless of whether detainee was placed on suicide watch in retaliation for threatening the guards or for his own protection, no liberty interest was implicated by his five-day placement there); see generally Meacham v. Fano, 427

---

[2] See also Hill v. Reinke, 1:13-CV-00038-BLW, 2014 WL 7272939, at *18 (D. Idaho Dec. 18, 2014), aff'd, 721 F. App'x 707 (9th Cir. 2018) (holding Vitek did not control where care providers determined an emergency existed and purpose of the transfer was to obtain diagnosis to enable prison to provide better treatment for inmate); Heilman v. Cook, No. 14-CV-1412 JLS (AGS), 2017 WL 2257962, at *8 (S.D. Cal. May 23, 2017), reconsideration denied, 14-CV-1412 JLS (AGS), 2017 WL 3783897 (S.D. Cal. Aug. 31, 2017) (holding that plaintiff's four-day confinement for observation and evaluation in the psychiatric unit within the prison did not implicate a liberty interest under the Fourteenth Amendment); Hill v. Wamble-Fisher, No. 1:11-CV-00101-REB, 2013 WL 3223634, at *5 (D. Idaho June 24, 2013) (holding that plaintiff's transfer to the mental health unit for less than 30 days so the prison could address an emergency mental health situation did not trigger due process protections); Gonzales v. Carpenter, No. 9:08-CV-629 LEK/ATB, 2011 WL 768990, at *11 (N.D.N.Y. Jan. 3, 2011), report and recommendation adopted, No. 9:08-CV-629 LEK ATB, 2011 WL 767546 (N.D.N.Y. Feb. 25, 2011) (concluding that "temporary confinement of an inmate with clear mental health problems for a total of less than 30 days for observation and evaluation in the psychiatric unit within a prison does not implicate a liberty interest." (citing, e.g., Jefferson, 324 F. App'x at 613)).

U.S. 215, 224–25 (1976) (holding that the Due Process clause does not directly confer a liberty interest in avoiding a transfer to more adverse confinement conditions). In short, Plaintiff has not alleged sufficient facts to state a claim for relief arising directly under the Due Process Clause.

As noted previously, a prisoner may have a state-created liberty interest in certain prison confinement conditions, entitling him to procedural Due Process protections. See Prieto, 780 F.3d at 248. "[I]f no state statute, regulation, or policy creates such a liberty interest," however, "a prisoner cannot 'invoke the procedural protections of the Due Process Clause.'" Id. (quoting Meachum, 427 U.S. at 224). Plaintiff has not identified any state statute, regulation, or policy that creates a liberty interest in avoiding being placed on suicide watch for a brief period, nor has he alleged that North Carolina has created such a liberty interest.

Even if such a state-created liberty interest exists, "to garner the protection of the Due Process Clause an inmate must also establish that 'the nature of [the] conditions themselves, in relation to the ordinary incidents of prison life,' impose 'an atypical and significant hardship.'" Prieto, 780 F.3d at 249 (quoting Austin, 545 U.S. at 223 (internal citation and quotation marks omitted)) (alteration made in Prieto). "[T]he Court has expressly 'reject[ed] . . . the notion that any grievous loss visited upon a person by the State is sufficient' to require constitutionally adequate procedure." Id. at 248 (quoting Meachum 427 U.S. at 224). Here, Plaintiff does not allege how his placement on suicide watch exceeded equally discretionary confinement (e.g. administrative segregation or protective custody) in either duration or degree of restriction or allege how it worked a major disruption in his environment. See Sandin, 515 U.S. at 486; Trujillo v. Sherman, No. 1:16-cv-01277-DAD-JLT (PC), 2017 WL 1549937, at *6 (E.D. Cal. May 1, 2017) ("Plaintiff's allegation that he was placed on a 24-hour suicide watch without

8

blankets or clothes does not meet the extreme requirements necessary to state a conditions of confinement claim under the Due Process Clause."). In addition, Plaintiff does not allege how his placement on suicide watch will inevitably affect the duration of his sentence. See Sandin, 515 U.S. at 487.

In sum, Plaintiff has not alleged the existence of a state-created liberty interest or that the nature of the conditions on suicide watch imposed an atypical and significant hardship, in relation to the ordinary incidents of prison life. Accordingly, he has failed to state a claim for relief under Twombly, 550 U.S. at 555 (requiring the complaint to contain enough facts to "raise a right to relief above the speculative level").

## IV. CONCLUSION

Plaintiff has not sufficiently alleged that a temporary transfer to another prison for placement on suicide watch, without more, creates a liberty interest arising directly under the Due Process Clause. Plaintiff also has not alleged he has a state-created liberty interest in avoiding being placed on suicide watch or that being placed on suicide watch imposes an atypical and significant hardship, in relation to the ordinary incidents of prison life. Consequently, the Complaint shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. No. 1) is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915(e)(2);

2. Plaintiff's Motion for Appointment of Counsel (Doc. No. 7) is **DENIED**; and

3. The Clerk of Court, respectfully, is directed to send copies of this Order and the

Clerk's Judgment to Plaintiff at New Hanover Correctional Center, where North Carolina Department of Public Safety records indicate he currently is housed.[3]

**SO ORDERED.**

Signed: January 14, 2019

Frank D. Whitney
Chief United States District Judge

---

[3] See NC DPS Offender Public Information at https://webapps.doc.state.nc.us./opi/offendersearch.do?method=view (LEAK, Bradley, Offender No. 0235780, last viewed Jan. 14, 2019).